**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| VALERIE MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-1125-STE |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for benefits. Following two hearings, an Administrative Law Judge

(ALJ) issued an unfavorable decision. (TR. 12-35). Subsequently, the Appeals Council denied Plaintiff's request for review,[1] making the ALJ's decision the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant period—her alleged onset date of June 15, 2012 through her date last insured of September 20, 2013. (TR. 14). At step two, the ALJ determined that Ms. Miller had the following severe impairments: disorders of the cervical and lumbar spines, discogenic and degenerative; left knee impairment; and headache. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 during the relevant period. (TR. 17).

At step four, the ALJ concluded that during the relevant period, Ms. Miller retained the residual functional capacity (RFC) to:

> perform "sedentary work," as defined in 20 CFR 404.1567(a), except that the claimant can only: occasionally climb ramps and stairs, balance, and stoop; never climb ropes, ladders, or scaffolds, kneel, crouch, and crawl; frequently reach, handle, finger, and feel; must avoid exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; avoid exposure to industrial type vibration; and, due to pain,

---

[1] (TR. 1-3).

> headaches, and other symptomatology, understand, remember, and carry out simple instructions, make only simple, work related decisions, and deal with only occasional changes in work processes and environment.

(TR. 18) (footnote omitted).

At the administrative hearing, the ALJ presented these limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 79-80). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 79). The ALJ adopted the VE's testimony and concluded that during the relevant period, Ms. Miller was not disabled at step five based on her ability to perform the identified jobs. (TR. 34).

### III.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.   ISSUE PRESENTED

On appeal, Ms. Miller alleges the ALJ erred in failing to consider evidence related to functional limitations stemming from Plaintiff's headaches. (ECF No. 12:3-8).

## V.   ERROR IN THE CONSIDERATION OF EVIDENCE RELATED TO PLAINTIFF'S HEADACHES

At step two, the ALJ concluded that Ms. Miller suffered from severe headaches. (TR. 15). According to Plaintiff, the ALJ failed to properly consider evidence related to her headaches which potentially implicated limitations involving photophobia, phonophobia, and nausea. (ECF No. 12:3-8). The Court agrees with Ms. Miller.

### A.   The ALJ's Duty to Consider Evidence

As stated, the relevant disability period spans from June 15, 2012 through September 20, 2013. The record contains evidence related to Plaintiff's headaches which was documented before, during, and after the relevant period. The ALJ was obviously obliged to consider evidence from the relevant period itself. *See Grogan v. Barnhart*, 399F.3d 1257, 1261 (10th Cir. 2005) (noting that plaintiff could be entitled to disability benefits if he could demonstrate that he became disabled before the date last insured). And it is well-established that the ALJ should have also considered the evidence which

pre-dated the period of disability. See Hamlin v. Barnhart, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of [the plaintiff's] case record, and should have been considered by the ALJ."). Finally, the ALJ was required to consider evidence which post-dated the period of disability, if such evidence "disclose[d] the severity and continuity of impairments existing before the earning requirement date." Baca v. Dep't of Health & Human Servs., 5 F.3d 476, 479 (10th Cir. 1993). See e.g., Grogan, 399 F.3d at 1263 (10th Cir. 2005) ("if Grogan had a mental impairment that had manifested itself as a disability before the end of his insurance window—even if that mental impairment was diagnosed after the window had closed, the Commissioner is responsible for covering the impairment."); Hamlin, 365 F.3d at 1217 (holding that the ALJ erred by neglecting to discuss an RFC evaluation authored by a treating source after the claimant's date last insured, where the evaluation covered the relevant period); Potter v. Sec'y of Health & Human Servs., 905 F.2d 1346, 1348–49 (10th Cir. 1990) (noting that physician may provide retrospective diagnosis of condition, but evidence of actual disability during insured period is required); Morris v. Saul, 2019 WL 2929051, at *6 (D.N.M. July 8, 2019) (noting that "medical opinions authored after the date last insured do sometimes bear on the nature and severity of a claimant's condition within the relevant period.").

    **B.**    **Evidence of Headache-Related Limitations**

In support of her argument that the ALJ failed to properly consider evidence related to her migraine headaches, Plaintiff relies on:

- An August 29, 2011 record documenting her daily headaches which caused photophobia, phonophobia, and nausea;

- An October 13, 2011 record noting that she had a 20-year history of migraine headaches which had become recently "more frequent," sometimes occurring daily, and which caused dizziness, nausea, photophobia, and phonophobia;

- A March 8, 2012 record which documented her 18-year history with migraines which caused nausea, photophobia and phonophobia;

- A July 25, 2012 record which documented "frequent" migraine headaches;

- A September 11, 2012 record which documented migraine headaches;

- A March 14, 2013 record which documented migraine headaches;

- A July 24, 2013 record which documented a two-day migraine headache;

- A June 10, 2014 record which stated that she had suffered 10 years with photosensitivity and was having "chronic daily migraine headaches;"

- A July 8, 2014 neurological consult record which stated that she had been referred due to reoccurring, chronic headaches which had been "constant" for the past eleven months and which caused nausea, photophobia, phonophobia, blurry vision, and pain;

- An August 5, 2014 record which noted treatment for her "severe" headaches which caused nausea, photophobia, and phonophobia;

- A September 9, 2014 records which showed treatment from chronic, recurrent migraines which caused nausea, photophobia, and phonophobia;

- A September 18, 2015 record documented a migraine which had been occurring for two days which caused nausea, photophobia, and phonophobia;

- A January 11, 2016 record which documented treatment for her chronic, constant migraines headaches which caused vomiting and photophobia; and

- A February 27, 2017 record which stated that she suffered from headaches more than 15 days per month, and the headaches caused nausea, photophobia, and phonophobia.

(ECF No. 12:4-5; TR. 439, 447, 454, 457, 461, 536, 553, 559, 560, 577, 579, 586, 622, 931, 935, 1017).

### C. Error in the ALJ's Consideration of the Evidence

In the decision, the ALJ summarized the objective medical evidence in Plaintiff's case. (TR. 22-31). In doing so, the ALJ omitted some of the records relied on by Ms. Miller, and of the evidence he did cite, his review was selective. Reversal is warranted due to the ALJ's omission of probative evidence, selective review, and lack of analysis regarding symptoms and limitations related to Plaintiff's migraine headaches.

First, the ALJ failed to discuss all the relevant evidence relating to Plaintiff's headaches. For example, the ALJ omitted any discussion of:

- the July 24, 2013 record documenting that Plaintiff had been suffering from a migraine for the previous two days and

- the August and September 2014 records[2] which documented Plaintiff's continued treatment for headaches which caused nausea, photophobia, and phonophobia.

(TR. 12-35).

---

[2] Although the August and September records post-dated the relevant period, the ALJ should have considered them in evaluating Ms. Miller's headaches, based on the evidence which documented that the headaches had constituted a severe impairment during the disability period. See supra.

The headache-related symptoms were significantly probative on the issue of related limitations. *See Thurston v. Colvin*, No. 15-1378-SAC, 2016 WL 6905901, at *5 (D. Kan. Nov. 22, 2016) (noting that physician's opinions regarding a plaintiff's light sensitivity were "sufficiently specific regarding plaintiff's limitations."). Although the ALJ is not required to "discuss every piece of evidence"[3] the ALJ's decision will only be deemed adequate if it discusses the "uncontroverted evidence" the ALJ chooses not to rely upon and any "significantly probative evidence" the ALJ decides to reject. *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009). The ALJ was entitled to reject the opinions, but here, the ALJ never mentioned them. The error warrants reversal. *See Deardorff v. Comm'r, SSA*, 762 F. App'x 484, 490 (10th Cir. 2019) ("The ALJ erred by failing to discuss the significant evidence of [the plaintiff's] headaches and how they might impact his functional abilities.").

Next, although the ALJ acknowledged some of the evidence relied on by Plaintiff, the ALJ: (1) omitted portions of the records regarding specific symptoms and/or limitations caused by the headaches and (2) failed to provide an explanation regarding his apparent rejection of the same. For example, the ALJ noted the August 23, 2011 diagnosis of "headache," but the ALJ failed to mention that the report stated that Plaintiff had reported "almost daily" headaches for the past two months, which caused photophobia, phonophobia, and nausea. *Compare* TR. 23 *with* TR. 1017. Similarly,

---

[3] *Frantz v. Astrue,* 509 F.3d 1299, 1303 (10th Cir. 2007).

although the ALJ acknowledged the October 13, 2011 record which documented a history of headaches which had become "more frequent," the ALJ failed to mention the related symptoms of nausea, photophobia, and phonophobia which were noted in the record. *Compare* TR. 23 *with* TR. 536. And although the ALJ acknowledged the March 8, 2012 record which diagnosed migraine headaches, the ALJ failed to discuss the portion of the opinion which noted photophobia, phonophobia, and nausea caused by the headaches. *Compare* TR. 23 *with* 461.

The ALJ also acknowledged the July 8, 2014 diagnosis of "chronic migraines" and that Plaintiff had been suffering with a headache for eleven months, but the ALJ failed to note that the headaches caused nausea, photophobia, phonophobia, and nausea. *Compare* TR. 26 *with* TR. 553. The ALJ also acknowledged the September 18, 2015 assessment of migraine headaches, but omitted the portion of the record which noted that her migraine treatment was not working and she experienced photophobia, phonophobia, and nausea. *Compare* TR. *with* TR. 586. And while the ALJ discussed the January 11, 2016 diagnosis of "acute exacerbation of chronic migraine," he failed to mention that the headache had caused Ms. Miller to vomit ten times, and have photophobia. *Compare* TR. 25 *with* TR. 622-623. Finally, the ALJ acknowledged a February 27, 2017 record which diagnosed a "chronic daily headache," but the ALJ failed to mention that Ms. Miller was experiencing headaches which occurred more than 15 times per month, and which caused nausea, photophobia, and phonophobia. *Compare* TR. 27 *with* TR. 931, 935.

The ALJ's selective review is impermissible and constitutes reversible error. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that the ALJ's reasons stated in evaluating medical opinions must allow for meaningful appellate review); *Deardorff*, 762 F. App'x at 490 ("In reviewing the evidence, … the ALJ cited to medical records for some symptoms, but ignored the headache symptoms even though they are noted in those same records.").

Finally, although the ALJ acknowledged some of the evidence related to Plaintiff's migraines, he failed to explain his treatment of *any* of the records. The administrative decision documents a 10-page summary of the objective medical evidence, followed by the ALJ's statement that:

> [T]he record fails to document sufficient valid, objective medical evidence to substantiate the degree of functional limitations alleged by the claimant though the **date last insured**. The claimant undoubtedly experienced some discomfort associated with her conditions. The evidence of record, such as examination findings as well as MRI's of the spine and head only document the claimant's mild to moderate symptoms for the relevant period.

(TR. 31-32). The ALJ's emphasis on the "date last insured" indicates his belief in a lack of evidence during that period which would support greater limitations than those set forth in the RFC. But as discussed, the records which pre-dated and post-dated the relevant period were probative on the issue of headaches and should have been considered. *See supra*. Furthermore, the relevant period *did* include records which documented Plaintiff's photophobia, phonophobia, and nausea. *See* TR. 461, 536, 1017. In total, ten records documented these headache-related symptoms,[4] but the ALJ erred in failing to explain his apparent rejection of the same. *See Southard v. Saul*, 2019 WL 7285554, at *3 (W.D. Okla. Dec. 27, 2019) (error owing to ALJ's failure to explain his apparent rejection of migraine-related limitation involving photophobia); *Anderson v. Saul*, 2019 WL 4738266, at *4 (W.D. Okla. Sept. 27, 2019) (same; involving evidence of migraine-related photophobia and phonophobia).

The ALJ obviously believed that the headaches existed, as evidenced by his step two finding that the impairment was severe. *See* TR. 15. But for the reasons discussed, the ALJ's failure to explain his omission of certain records and his selective review of others, is unacceptable.

The error is exacerbated when viewed in light of Ms. Miller's testimony. At the administrative hearing, Plaintiff testified that at her last job, which was during the relevant period, she was basically "forced to quit" because she was missing approximately two

---

[4] *See* TR. 461, 536, 553, 559, 560, 577, 586, 622, 931, 1017.

days of work a week, in part, due to migraine headaches. (TR. 69). Ms. Miller also testified that during the relevant period, her headaches caused nausea, occasional vomiting, photophobia, and phonophobia. (TR. 70). Plaintiff also stated that she was having migraines approximately 15-20 times per month, and if the headache was severe, "there[ ] [was] no way to function … whatsoever." (TR. 70-71).

The Commissioner offers three arguments to defend the ALJ's decision, but none of them are persuasive.

First. Mr. Saul states: "There is no evidence that any treating medical source limited Plaintiff in any way during the relevant period." (ECF No. 15:8). This is simply untrue. As discussed, the record contained evidence during the relevant period that Plaintiff suffered from limitations involving photophobia, phonophobia, and nausea. *See supra*. As discussed, the ALJ erred in failing to consider this evidence.

Second, Defendant states that Plaintiff's headaches were adequately accounted for in the RFC based on the ALJ's statement that "due to … headaches," Plaintiff could only "understand, remember, and carry out simple instructions, make only simple, work related decisions, and deal with only occasional changes in work processes and environment." (ECF No. 15:9); *see* TR. 18. But the ALJ cites no opinion, and indeed none exists, which correlates the forgoing limitations with Plaintiff's headaches, as the RFC implies. What is obviously omitted, is any discussion of the photophobia, phonophobia, and nausea, which could have impacted the RFC.

Finally, Mr. Saul states that "the ALJ discussed the medical evidence from before, during, and after the relevant period related to Plaintiff's particular conditions and symptoms at length in making his findings and assessing the RFC. The ALJ adequately articulated his consideration of Plaintiff's headaches and the related symptoms that Plaintiff alleged." (ECF No. 15:9). But as discussed, the ALJ omitted mention of significantly probative evidence, engaged in improper selective review, and failed to explain his reasoning regarding his apparent rejection of Ms. Miller's headache-related symptoms. The Commissioner's third argument is belied by the administrative decision.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. For the reasons explained, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on June 30, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE